FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 17, 2025

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES,<br><br>Plaintiff,<br><br>v.<br><br>IVAN GUTIERREZ-LOPEZ,<br><br>Defendant. | No. 2:22-CR-0029-RLP<br><br>ORDER GRANTING MOTION TO DISMISS INDICTMENT |

Before the Court is Ivan Gutierrez-Lopez's motion to dismiss the Indictment, charging him with being an alien in the United States after deportation in violation of 8 U.S.C. § 1326. ECF No. 30. A hearing was held on this matter on July 15, 2025. Joel Baumann of the Federal Defenders of Eastern Washington and Idaho appeared on behalf of Mr. Gutierrez-Lopez. The Government was represented by Assistant United States Attorney Michael Ellis. Mr. Gutierrez-Lopez was present and assisted by federally certified interpreter Bea Rump.

Mr. Gutierrez-Lopez argues the Indictment must be dismissed because it is predicated on an invalid order of removal. To collaterally attack an order of

ORDER ~ 1

removal in this context, a defendant must satisfy three prerequisites: (1) exhaustion of available administrative remedies, (2) deprivation of judicial review, (3) and fundamental unfairness. 8 U.S.C. § 1326(d). The Court agrees with Mr. Gutierrez-Lopez that all three criteria have been met. Thus, the motion to dismiss is granted.

## BACKGROUND

Ivan Gutierrez-Lopez is a citizen of Mexico. He entered the United States in 2001 at the age of 18. ECF No. 32 at 4. In 2003, Mr. Gutierrez was convicted of Taking a Vehicle Without Owner's Consent in violation of California Code § 10851 and was sentenced to 14 months in custody. ECF No. 32 at 8. Upon completion of his sentence in March 2004, Mr. Gutierrez-Lopez was released to the custody of Immigration and Customs Enforcement in California.

On March 25, 2004 at 9:41 a.m., Special Agent Ulises Solario prepared a Record of Deportable/Inadmissible Alien, Form I-831 for Mr. Gutierrez-Lopez. ECF No. 33-1. The English-language form included information about Mr. Gutierrez-Lopez's alienage and criminal history. The form stated Mr. Gutierrez-Lopez would be processed for administrative removal. *Id*. at 1.

The I-831 form contains some hand-written notes and a fingerprint. Included in the notes are the following statements, "Claims no fear of return to Mexico" and "Claims no appeal filed for criminal conviction." *Id.* The I-831 form states it was received by Deputy IHP Director Paul Leonardi at 10:08 a.m. *Id*.

ORDER ~ 2

At 3:20 p.m. on March 25, Director Leonardi signed off on a Notice of Intent to Issue a Final Administrative Removal Order, Form I-851. ECF No. 32 at 11. The English-language form advised that Mr. Gutierrez-Lopez was deportable because he had "been convicted of an aggravated felony." *Id*. The form stated that Mr. Gutierrez-Lopez had the right to be represented by counsel at no expense to the government. *Id*. It also stated Mr. Gutierrez-Lopez had 10 days to respond to the notice of removal and that, in a response, Mr. Gutierrez-Lopez could make the following requests:

> an extension of time; rebut the charges stated above (with supporting evidence); request an opportunity to review the government's evidence; admit deportability; designate the country to which you choose to be removed in the event that a final order of removal is issued …; and/or, if you fear persecution in any specific country or countries on account of race, religion, nationality, membership in a particular social group, or political opinion or, if you fear torture in any specific country or countries, you may request withholding of removal … or withholding/deferral of removal.

*Id*. Finally, the form advised Mr. Gutierrez-Lopez he could "seek judicial review of any final administrative order by filing a petition for review within 14 calendar days after the date such final administrative order is issued, or you may waive such appeal by stating, in writing, your desire not to appeal." *Id*.

Agent Solario signed an English-language proof of service form, stating he served the I-851 Form on Mr. Gutierrez-Lopez in Fresno, California and that he explained the form to Mr. Gutierrez-Lopez in the "SPANISH/ENGLISH"

ORDER ~ 3

1. language. *Id*. at 12. Mr. Gutiererz-Lopez signed the proof of service form below

2. the following statement, "I Acknowledge that I Have Received this Notice of

3. Intent to Issue a Final Administrative Removal Order." *Id*. Mr. Gutiererez-Lopez's

4. portion of the form also contains a fingerprint. *Id*.

5.     The proof of service form included a section that Mr. Gutierrez-Lopez could

6. have filled out had he wished to contest deportability. Four check-boxes were

7. provided that specified possible grounds:

> ☐ I am a citizen or national of the United States.
> ☐ I am a lawful permanent resident of the United States.
> ☐ I was not convicted for the criminal offense described in allegation number 6 above.
> ☐ I am attaching documents in support of my rebuttal and request for further review.

ECF No. 32 at 12. Mr. Gutierrez did not fill out this portion of the form.

    Instead of filling out the portion of the form regarding contesting deportability, Mr. Gutierrez-Lopez signed the portion of the form stating he did not wish to contest or request withholding of removal. Mr. Gutierrez-Lopez checked a box that stated:

> I admit the allegations and charge in this Notice of Intent. I admit that I am deportable and acknowledge that I am not eligible for any form of relief from removal. I waive my right to rebut and contest the above charges and my right to file a petition for review of the Final Removal Order. I do not wish to request withholding or deferral of removal. I wish to be removed to _____.[1]

---

[1] The area for designating a country of removal was left blank.

ORDER ~ 4

*Id*. Mr. Gutierrez-Lopez also checked a box stating he waived the 14-day period for execution of the Final Removal Order. *Id*. Mr. Gutierrez-Lopez and Agent Solario signed the form at 3:25 p.m. *Id*. The signature portion of the form also contains a fingerprint. *Id*.

A Final Administrative Removal Order was issued against Mr. Gutierrez-Lopez on March 25, 2004 in Bakersfield, California. ECF No. 33-2. Agent Solario signed a certificate of service, verifying that he had served the final administrative removal order on Mr. Gutierrez-Lopez. *Id*. A warrant for removal was issued and executed later that same day. ECF No. 32 at 14-15.

Mr. Gutierrez-Lopez was found back in the United States in 2010. He was issued a reinstatement of his prior order of removal and removed to Mexico on October 18, 2010. ECF No. 33-5, ECF No. 41.

Mr. Gutierrez-Lopez again located in the United States in August 2021, at which time he was charged with Second Degree Murder in Spokane County. *See* ECF No. 1, ECF No. 10 at 3. Because Mr. Gutierrez-Lopez complained of memory issues secondary to a previous traumatic brain injury, he underwent a competency evaluation and was found competent to stand trial. ECF No. 33-8. Mr. Gutierrez-Lopez ultimately pleaded guilty to First Degree Manslaughter and Second Degree Unlawful Firearm Possession in Spokane County and was sentenced to 14 months imprisonment. ECF No. 33-9. A handwritten note on the Judgment under Criminal

ORDER ~ 5

History indicates Mr. Gutierrez-Lopez "does not recall either [prior] conviction." *Id*. at 3.

In March 2022, Mr. Gutierrez-Lopez was indicted on one count of Alien in the United States After Deportation in violation of 8 U.S.C. § 1326. ECF No. 1. The Indictment alleges both the 2004 and 2010 removals as predicates for the charge. *Id*.

## MOTION TO DISMISS

Mr. Gutierrez-Lopez moves to dismiss the Indictment, arguing his prior removal order is invalid. Mr. Gutierrez-Lopez contends his administrative removal based on an aggravated felony was fundamentally unfair because in 2021 the Ninth Circuit determined that his prior crime of Taking a Vehicle Without Owner's Consent in violation of California Code § 10851, does not qualify as an aggravated felony. *See Lopez-Marroquin v. Garland*, 9 F.4th 1067 (9th Cir. 2021). Mr. Gutierrez-Lopez further claims that, given the circumstances of his case, he had no ability to challenge the basis for his removal at the time of his 2004 proceedings and that he was improperly deprived of judicial review. Mr. Gutierrez-Lopez recognizes he was also removed in 2010. However, because that removal was based on a reinstatement of the 2004 administrative removal order, its validity rests on the validity of the 2004 order. *See United States v. Arias-Ordonez*, 597 F.3d

ORDER ~ 6

972, 982 (9th Cir. 2010), *abrogated on other grounds as recognized in United States v. Portillo-Gonzalez*, 80 F.4th 910, 918 (9th Cir. 2023).

Mr. Gutierrez-Lopez has submitted a declaration in support of his motion. He states he can speak and read Spanish but cannot read or understand English. ECF No. 32 at 4. He reports that after serving his California sentence for theft of a motor vehicle, he was transported to San Diego. In March 2004, he met with an immigration agent along with many other undocumented people. The agent met with each person for a few minutes. The agent told Mr. Gutierrez-Lopez he was being deported. Mr. Gutierrez-Lopez claims the agent did not explain that he had the right to an attorney. According to Mr. Gutierrez-Lopez, the agent said that if he signed, he would be quickly released to Mexico. The agent did not explain Mr. Gutierrez-Lopez was being deported for an aggravated felony. He did not tell Mr. Gutierrez-Lopez that he could challenge this characterization of his prior felony or tell him that he could submit documents or other evidence to challenge deportation. Mr. Gutierrez-Lopez claims the agent did not translate the forms provided, he simply instructed Mr. Gutierrez-Lopez provide his signature.

The Government disputes the legal and factual bases of Mr. Gutierrez-Lopez's motion. In support of its position, the Government has filed a declaration from Agent Solario, who is now retired. ECF No. 33-4. Agent Solario states he has no independent recollection of Mr. Gutierrez-Lopez. However, he is familiar with

ORDER ~ 7

his general practices and, based on his review of the paperwork, there is no indication he deviated from his general practices in Mr. Gutierrez-Lopez's case. According to Agent Solario, it was his standard practice to meet with detained individuals in their holding cells. Agent Solario is fluent in Spanish. If a detained person only spoke Spanish, Agent Solario "would explain the I-851 form in Spanish." *Id*. at 2. It was Agent Solario's standard practice to explain the rights to be represented by counsel, the deadline for responding to the Notice of Intent, and the right to seek judicial review of a final order of removal. *Id.* Agent Solario would ask for the individual's signature and fingerprint to acknowledge receipt of the I-851 form and to confirm how they wished to respond to the Notice of Intent. *Id*. If an individual did not wish to contest removal, it was not uncommon for them to be removed the same day. Agent Solario's declaration does not specify that he would have provided any information to an individual that is not set forth in the I-851 form.

## ANALYSIS

Mr. Gutierrez-Lopez is charged with illegal re-entry, in violation of 8 U.S.C. § 1326. Under that statute, a defendant may not collaterally challenge the validity of a prior order of removal unless:

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

ORDER ~ 8

   (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
   (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).

  The parties dispute all three components of § 1326(d). Each is addressed in turn.

1. Exhaustion of Available Administrative Remedies

  The first requirement of § 1326(d) is that the alien must have exhausted available administrative remedies. Mr. Gutierrez-Lopez contends that this requirement is met because there were no available administrative remedies that would have allowed him to challenge whether he was subject to deportation as an aggravated felon. The Court agrees.

  Section 1326(d) requires the Court to examine the issue of exhaustion of administrative remedies separately from the other two criteria. *See United States v. Palomar-Santiago*, 593 U.S. 321, 141 S.Ct. 1615 (2021). Even if a defendant's immigration proceedings were marred by a legal error that might implicate fundamental fairness as contemplated by § 1326(d)(3), exhaustion is still required. A substantive legal error in the immigration proceedings does not "excuse the noncitizen's failure to comply with a mandatory exhaustion requirement if further administrative review, and then judicial review if necessary, could fix that very error." *Id*. at 322.

ORDER ~ 9

1 While exhaustion is the rule, the text of § 1326(d)(1) specifies that
2 exhaustion is only required when administrative remedies are "available." An
3 administrative remedy is not "available" if it operates as a "simple dead end." *Ross*
4 *v. Blake*, 578 U.S. 632, 633, 136 S.Ct. 1850 (2016). Implicit in *Palomar-Santiago*
5 is the recognition that if an administrative remedy is unavailable, and effectively a
6 legal dead end, if it cannot "fix [the] very error" that rendered the order of removal
7 unlawful. *Palomar-Santiago*, 593 U.S. at 322.
8 Mr. Gutierrez-Lopez persuasively argues that he has satisfied the exhaustion
9 requirement because there were no administrative remedies available to fix the
10 error in his case. Specifically, Mr. Gutierrez-Lopez argues that his order of
11 removal was unlawful because his prior felony conviction was improperly
12 classified as an aggravated felony. Yet the administrative removal process used in
13 his case did not allow him any administrative options for raising this challenge.
14 Under the pertinent immigration regulations, an administrative response to a final
15 order of removal is limited to: (1) designation of choice country for removal; (2)
16 submission of a written response rebutting the allegations supporting the charge;
17 (3) requesting the opportunity to review the Government's evidence and/or (4)
18 request withholding of removal. 8 C.F.R. § 238.1(c)(1). This is consistent with the
19 four check-boxes listed on Mr. Gutierrez-Lopez's I-851 form. ECF No. 32 at 11.
20 While one of the possible avenues for administrative challenge was to rebut the

ORDER ~ 10

allegations for removal, the regulations provide only for consideration of a genuine issue of material fact, not legal conclusions. 8 C.F.R. 238.1(d)(2)(ii)(A). Again, this limitation is consistent with the language in the four check-boxes on Mr. Gutierrez's form. ECF No. 32 at 11. Thus, Mr. Gutierrez-Lopez had no administrative option for challenging the conclusion that his offense constituted an aggravated felony.

Because Mr. Gutierrez-Lopez had no administrative remedy available, there was no remedy to exhaust. Mr. Gutierrez-Lopez therefore meets the requirement of 8 U.S.C. §1326(d)(1).

2. Deprivation of opportunity for judicial review

Unlike what was true of administrative remedies, judicial review provided Mr. Gutierrez-Lopez the possibility of challenging the designation of his prior conviction as an aggravated felony. Although at the time of his 2004 removal, 8 U.S.C. § 1252(a)(2)(C) (2004) had stripped the judiciary of "jurisdiction to review any final order of removal against an alien who [was] removeable by reason of having committed" an aggravated felony, case law made clear that courts retained jurisdiction to determine their jurisdiction. *Ye v. INS*, 214 F.3d 1128, 1131 (9th Cir. 2000); *see also Zavaleta-Gallegos v. INS*, 261 F.3d 951, 954 (9th Cir. 2001) ("appellate courts retain jurisdiction to determine whether a petitioner is an alien removable by reason of having been convicted of one of the enumerated offenses")

ORDER ~ 11

(citations, alteration, and internal quotation marks omitted). Indeed, Mr. Gutierrez-Lopez's I-851 form stated that he had the right to seek judicial review within 14 days. ECF No. 32 at 11.

Mr. Gutierrez-Lopez argues that, regardless of the legal availability of judicial review, he was deprived of the opportunity for judicial review as contemplated by 8 U.S.C. § 1326(d)(2) because he never validly waived his right to judicial review. *See Mendoza-Lopez*, 481 U.S. 828, 840, 107 S.Ct. 2148 (1987).

When a defendant challenges the validity of a waiver of the right to judicial review, the Government is tasked with establishing a valid waiver.[2] This requires

---

[2] The Government argues *Palomar-Santiago* requires a Defendant to make a threshold showing that a waiver is not voluntary in order to trigger the Government's burden. The Government cites no authority for this argument. To trigger the Government's burden of proving a voluntary waiver, the Ninth Circuit has recognized that a defendant need only "contest[ ] the validity of his waiver." *United States v. Gomez*, 757 F.3d 885, 893 (9th Cir. 2014). In any event, Mr. Gutierrez-Lopez has filed a declaration challenging the voluntariness of his waiver. The facts recited in the declaration constitute more than a vague claim that the waiver was involuntary. They instead provide a specific basis for questioning voluntariness. The fact that the Government has been able to produce some facts

ORDER ~ 12

the Government to "prove by clear and convincing evidence that the alien received adequate advisement of the consequences of his waiver of appeal." *United States v. De La Mora-Cobian*, 18 F.4th 1141, 1148 (9th Cir. 2021) (citations and internal quotations omitted).

Citing *United States v. Valdivia-Flores*, 876 F.3d 1201 (9th Cir. 2017), *overruled on other grounds by Alfred v. Garland*, 64 F.4th 1025 (9th Cir. 2023), Mr. Gutierrez-Lopez argues the Government cannot meet its burden because the I-851 form used by Agent Solario violates due process. As was the case in *Valdivia-Flores*, the form used by Agent Solario did not inform Mr. Gutierrez-Lopez that "he could refute, through either an administrative or judicial procedure, the legal conclusion underlying his removability." *Id*. at 1206. Instead, the list of options on the I-851 form included a list of check boxes and "the only check box relevant to the conviction itself only allowed" the alien to challenge "that he 'was not convicted of the criminal offense described.'" *Id*.

---

questioning Mr. Gutierrez-Lopez's credibility does not mean that the Government's burden to prove voluntariness has not been triggered. Indeed, one way that the Government can attempt to meet its burden is by producing facts that call into question the defendant's credibility.

ORDER ~ 13

The Government has proffered evidence that Agent Solario met with Mr. Gutierrez-Lopez and reviewed the I-851 form with him. According to his declaration, Agent Solario would have translated the I-851 form into Spanish for Mr. Gutierrez-Lopez. ECF No. 32 at 12. Agent Solario also would have the right to representation of counsel and the right to seek judicial review of a final order of removal. ECF no. 32 at 11.

The Government's proffer is inadequate because nowhere in his declaration does Agent Solario indicate that he would have explained that judicial review was broader than administrative review and would have allowed Mr. Gutierrez-Lopez to challenge the legal characterization of his prior conviction. Given that the check boxes on the removal form only allowed Mr. Gutierrez-Lopez to seek review of the fact of his prior conviction, not its legal characterization, the plain wording of the I-851 form, as interpreted by Agent Solario, suggested Mr. Gutierrez-Lopez did not have the right to seek judicial review. Under *Valdivia-Flores*, the Government has not shown a valid waiver.

The Supreme Court's decision in *Palomar-Santiago* does not undermine *Valdivia-Flores*'s rule regarding the requirements for a considered and intelligent waiver of the right to judicial review. In *United States v. Valdivias-Soto*, 112 F.4th 713, 725 (9th Cir. 2024), the Ninth Circuit made clear that the Government's burden to prove a valid waiver of judicial review remains applicable post-*Palomar-*

ORDER ~ 14

*Santiago*. The impact of *Palomar-Santiago* on the waiver context is that misadvice as to an immigrant's eligibility for relief from deportation will not render a waiver of judicial review invalid. *Valdivias-Soto*, 112 F.4th at 727-28. After all, the nature of the right of judicial review is to correct a decision-maker's substantive errors. *Id*. But if an immigration officer or an immigration form misleads an immigrant about the availability to "*apply*" for relief, then the Government cannot carry its burden of establishing a waiver of the right to review. *See id.* at 727.

Here, the I-851 form was misleading as to the availability of relief from the order of removal. There is no evidence that Agent Solario did anything to disabuse Mr. Gutierrez-Lopez of the form's misimpression. Given this context, the Government cannot establish that Mr. Gutierrez-Lopez's waiver of the right to judicial review was "considered and intelligent." *Valdivia-Flores*, 876 F.3d at 1206.

### 3. Fundamental unfairness

The third requirement of §1326(d) is met if entry of the removal order was fundamentally unfair. The fundamental unfairness requirement is met where the defendant shows that defects in the removal proceeding deprived him of due process and he suffered prejudice as a result. *See United States v. Nunez*, 140 F.4th 1157, 1167 (9th Cir. 2025). Removal on an improper basis establishes prejudice in any context. *United States v. Aguilera-Rios*, 769 F.3d 626, 630 (9th Cir. 2014).

ORDER ~ 15

1  The parties agree that under the Ninth Circuit's decision in *Lopez-Marroquin v. Garland*, Mr. Gutierrez-Lopez's conviction for Taking a Vehicle Without Owner's Consent in violation of § 10851 of the California Vehicle Code is no longer considered an aggravated felony. 9 F.4th 1067, 1074 (9th Cir. 2021). Mr. Gutierrez-Lopez contends that because he was not convicted of an aggravated felony, he was never removeable as charged. He therefore argues that the administrative order prejudiced him and meets the fundamental unfairness requirement of § 1326.

The Government acknowledges the usual rule that statutory interpretation decisions are retroactive, *see United States v. Aguilar-Rios*, 760 F.3d 626, 633 (9th Cir. 2014), but contends that any hypothetical appeal by Mr. Gutierrez-Lopez in 2004 would not have changed the result because as recently as 2013, the Ninth Circuit held that Mr. Gutierrez-Lopez's underlying offense was an aggravated felony. *See Duanas-Alvarez v. Holder*, 733 F.3d 812 (9th Cir. 2013).

The Government's position fails to recognize that an alien need only establish "plausible" grounds for relief from removal. *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1089 (9th Cir. 2011) (citation omitted). Here, it is at least *plausible* that had Mr. Gutierrez-Lopez appealed, he would have been able to convince the Ninth Circuit to correctly interpret the law. Prejudice is therefore established. It does not matter that Mr. Gutierrez-Lopez might have been subject to

ORDER ~ 16

removal on grounds other than those asserted by in the Notice of Intent to Issue a Final Administrative Removal Order. *United States v. Ochoa-Oregel*, 904 F.3d 682, 686 (9th Cir. 2018).

4. The 2010 Reinstatement Order

The Government argues that regardless of the problems with Mr. Gutierrez-Lopez's 2004 order of removal, this prosecution can proceed based on the 2010 order of reinstatement. *See* ECF No. 41. The Court disagrees. Under current law, the validity of a reinstatement order is controlled by the underlying order. *See United States v. Arias-Ordonez*, 597 F.3d 972, 982 (9th Cir. 2010), *abrogated on other grounds as recognized in United States v. Portillo-Gonzalez*, 80 F.4th 910, 918 (9th Cir. 2023) ("a successful collateral attack on a removal order precludes reliance on a reinstatement of that same order in a criminal proceeding for illegal reentry"). The Government claims that this line of cases was effectively overruled by the Supreme Court's decision in *Palomar-Santiago*. However, *Palomar-Santiago* did not address reinstatement orders. Thus, this Court remains bound by Ninth Circuit authority. Furthermore, the 2010 reinstatement order suffers from the same flaws as the 2004 order. The 2010 reinstatement order did not provide for administrative remedies that would have allowed Mr. Gutierrez-Lopez to challenge the legal characterization of his prior conviction. Furthermore, the 2010 reinstatement order does not provide any sort of notice of right to judicial review

ORDER ~ 17

or waiver of the right that might overcome the misleading nature of the notice of judicial review set forth in the 2004 paperwork. *See* ECF No. 41.

## CONCLUSION

Mr. Gutierrez-Lopez has satisfied all three requirements for a collateral attack under 8 U.S.C. § 1326(d). He has satisfied the exhaustion requirement because there were no available administrative remedies. He was deprived of the opportunity for judicial review because his waiver of judicial review was not valid. And his order of removal was fundamentally unfair because he should have never been removed as charged.

**IT IS ORDERED:**

1. Defendant's Motion to Dismiss, **ECF No. 30**, is **GRANTED**.

2. The Indictment, **ECF No. 1**, is **DISMISSED WITH PREJUDICE**.

3. All pretrial and trial dates and deadlines are **STRICKEN**.

4. Pending motions, if any, are **DENIED AS MOOT**.

The District Court executive is directed to enter this order, provide copies to counsel, U.S. Probation, and to the United States Marshal, and close the file.

DATED July 17, 2025.



REBECCA L. PENNELL
UNITED STATES DISTRICT JUDGE

ORDER ~ 18